**PENNSYLVANIA**
**MOTOR VEHICLE INSTALLMENT SALE CONTRACT AND SECURITY AGREEMENT,** Dated 01/26/16    SIMPLE INTEREST

(DEBT CANCELLATION (GUARANTEED AUTO PROTECTION) SEPARATE DISCLOSURE AND AGREEMENT FOR DEBT CANCELLATION MUST ACCOMPANY THIS CONTRACT.)

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ 0.00 |
|---|---|---|---|---|
| 20.95 % | $ 20,453.59 | $ 26,754.65 | $ 47,208.24 | $ 47,208.24 |

Your Payment Schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 655.67 | Monthly, beginning 02/25/16 |
|  | $ N/A | N/A |

Filing Fees: $ ___N/A___

**Security:** You are giving a security interest in the motor vehicle being purchased.
**Prepayment:** If you pay off early, you will not have to pay a penalty.

**Late Charge:** If all or any portion of a payment is not received in full within 10 days after it is due, you will pay a late charge. The charge will be 2% of the part of the payment that is late. See below and any other Contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

e means estimate

IF YOU DO NOT MEET YOUR CONTRACT OBLIGATIONS, YOU MAY LOSE THE MOTOR VEHICLE AND PROPERTY THAT YOU BOUGHT WITH THIS CONTRACT, AND/OR MONEY ON DEPOSIT WITH THE ASSIGNEE.
This Contract is between Seller and Buyer. All disclosures have been made by Seller. Seller intends to assign this Contract to the Assignee.

In this Contract we are the SELLER. COLONIAL NISSAN    117 Bustleton Pike    Feasterville, PA 19053
Name    Address    Zip Code
County _____

You are the BUYER(S). ROBERT O TURNER  2632 LAMOTT AVENUE  WILLOW GROVE, PA 19090
Name(s)    Address(es)    Zip Code(s)
County MONTGOMERY

If there is more than one Buyer, each promises, separately and together, to pay all sums due us and to perform all agreements in this Contract.

**TRADE-IN:**
You have traded in the following vehicle: 2003  CHRYSLER COUNTRY
Year and Make    Description

If a balance is still owing on the vehicle you have traded in, the Seller will pay off this amount on your behalf. You warrant and represent to us that any trade-in is free from lien, claim, encumbrance or security interest, except as shown in the "Itemization of Amount Financed" as the "Lien Payoff."

**PROPERTY INSURANCE:** You may choose the person through whom insurance is obtained against loss or damage to the Vehicle and against liability arising out of use or ownership of the Vehicle. In this Contract, you are promising to insure the Vehicle and keep it insured.

**DEBT CANCELLATION (GUARANTEED AUTO PROTECTION) AGREEMENT IS VOLUNTARY AND NOT REQUIRED AS A CONDITION OF THE CREDIT.** This agreement will not be provided unless you sign below, agree to pay the additional charge, and sign the separate disclosure and agreement page, which is part of this Contract. This agreement will apply during the entire term of the Contract. This agreement may not cover your entire indebtedness; see the MAXIMUM PROTECTION amount stated in the separate disclosure and agreement.

| Type of Debt Cancellation Agreement | Charge | Signature |
|---|---|---|
| Guaranteed auto protection (GAP) | $ | By signing, you select guaranteed auto protection |
| N/A | N/A | Signature of Buyer |

**SERVICE CONTRACT OR WARRANTY AGREEMENT IS VOLUNTARY AND NOT REQUIRED AS A CONDITION OF THE CREDIT.** The service contract or warranty agreement will not be provided unless you sign the separate agreement with the third party provider, who is not the Seller named above, and agree to pay the additional charge. This section does not apply to any warranty that you may receive for which there is not separate charge.

**CREDIT INSURANCE IS NOT REQUIRED:** Credit Life Insurance and Credit Accident & Health (Disability) Insurance are not required to obtain credit, and will not be provided unless you sign below and agree to pay the additional cost(s). Please read the NOTICE OF PROPOSED CREDIT INSURANCE on the reverse side. Your insurance certificate or policy will tell you the MAXIMUM amount of insurance available. All insurance purchased will be for the term of the credit. We may receive a financial benefit from your purchase of credit insurance.

| By signing, you select Single Credit Life Insurance, which costs $ ___N/A___ | What is your age? N/A Years | By signing, you select Single Credit Accident & Health Insurance, which costs $ ___N/A___ | What is your age? N/A Years |
|---|---|---|---|

Signature of Buyer to be insured for Single Credit Life Insurance _____    Signature of Buyer to be insured for Single Credit Accident & Health Insurance _____

| By signing, you both select Joint Credit Life Insurance, which costs $ ___N/A___ | What are your ages? | By signing, you both select Joint Credit Accident & Health Insurance, which costs $ ___N/A___ | What are your ages? | Percentage to be insured |
|---|---|---|---|---|

1. _____ N/A    1. _____ N/A %
2. _____ N/A    2. _____ N/A %

Signatures of both Buyers to be insured for Joint Credit Life insurance _____
Signatures of both Buyers to be insured for Joint Credit Accident & Health Insurance _____

Insurer: _____

**VEHICLE:** You have agreed to purchase, under the terms of this Contract, the following motor vehicle and its extra equipment, which is called the "Vehicle" in this Contract.

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|
| U | 2012 HOND | P | N/A | N/A |  | 5FNRL5H6XCB146089 |

Equipped with: __ A.T. __ P.S. __ AM-FM Stereo __ 5 Spd. Other _____
__ A.C. __ P.W. __ AM-FM Tape __ Vinyl Top

**ASSIGNEE:** We may assign this Contract and Security Agreement to a sales finance company which is the "Assignee." If the Assignee assigns the Contract to a subsequent assignee, the term also refers to such subsequent assignee. After the assignment, all rights and benefits of the Seller in this Contract and in the Security Agreement shall belong to and be enforceable by the Assignee. The Assignee will notify you when and if Seller makes an assignment.

**CO-SIGNER:** Any person signing the Co-Signer's Agreement below promises separately and together with all Co-Signer(s) and Buyer(s), to pay all sums due and to perform all agreements in this Contract. **Co-Signer will not be an Owner of the Vehicle.**

**CO-OWNER:** Any person signing the Co-Owner's Security Agreement below gives us a security interest in the Vehicle and agrees separately and together with all Co-Owner(s) and Buyer(s), to perform all agreements in the Security Agreement and all other parts of this Contract except the "Promise to Pay" section.

**TERMS:** The terms shown in the boxes above are part of this Contract.

**PROMISE TO PAY:** You agree to pay us the Total Sale Price for the Vehicle by making the Cash Downpayment and assigning the Trade-In, if shown above, on or before the date of this Contract, and paying us the Amount Financed plus interest. You promise to make payments in accordance with the Payment Schedule. You promise to make payments on or before the same day of each month as the first payment due date. To the extent allowed by law, you agree to pay all other amounts which may become due under the terms of this Contract. You agree to pay the Seller or Assignee costs of suit. You also agree to pay reasonable attorneys' fees if Seller or Assignee hires an attorney to collect amounts due under this Contract or to protect or get possession of the Vehicle. You agree to make payments to the address which the Assignee most recently specifies in the written notice to you.

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

**ADDITIONAL DISCLOSURES, TERMS AND CONDITIONS:**
**Disclosures:** Before signing this Contract, be sure that you receive and read the Disclosure to Buyer.
**Terms and Conditions:** Before signing this Contract, be sure you receive and read the following, if marked X, which are additional pages to and part of this Contract.
☒ This Contract continues on the reverse side.
☐ Debt Cancellation (guaranteed auto protection) separate disclosure and agreement.

By signing below, we agree to sell the Vehicle to you under the terms of this Contract.

SELLER _____
BY: _[signature]_    Date _____
COLONIAL NISSAN    01/26/16

**NOTICE TO BUYER—DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREUNDER.**

BUYER _[signature]_    01/26/16
BUYER _____    Date

**Itemization of Amount Financed**

| 1a. Cash Price of Motor Vehicle | $ 22,275.00 |
|---|---|
| 1b. Government taxes | $ 1,429.50 |
| 1c. Accessories and installation | $ N/A |
| 1d. Delivery Charge | $ N/A |
| 1e. | $ N/A |
| 1f. | $ N/A |
| 1g. | $ N/A |
| 1h. | $ N/A |
| 1. Total Cash Price of Motor Vehicle (1a thru 1h) | $ 23,704.50 |
| 2a. Trade-in allowance | $ 700.00 |
| 2b. Less: Amount owing paid to: HELMS | $ 1,261.00 |
| 2c. Net Trade-In (2a minus 2b) | $ 561.00— |
| 2d. Cash payment | $ N/A |
| 2e. Manufacturer's rebate | $ N/A |
| 2f. Other down payment (describe) N/A | $ N/A |
| 2. Total Down Payment (2c thru 2f; If negative, enter $0 and see 4a.) | $ 0.00 |
| 3. Unpaid Cash Price Balance (1 minus 2) | $ 23,704.50 |
| 4a. Prior credit or lease balance payment on trade-in (paid to same as 2b.) | $ 561.00— |
| 4b. Insurance premiums paid to insurance company(ies) | $ N/A |
| Other Charges, | |
| 4c. Optional Debt Cancellation (GAP Waiver) | $ N/A |
| 4d. Document Preparation fee | $ 113.00 |
| 4e. For Messenger Service To: N/A | $ N/A |
| 4f. Paid to Public Officials, including filing fees | $ 126.15 |
| 4g. (Optional) Service Contract, paid to: CNA NATIONAL | $ 2,250.00 |
| 4h. (Optional) Service Contract, paid to: N/A | $ N/A |
| 4. paid to: N/A | $ N/A |
| 4. paid to: N/A | $ N/A |
| 4. Total other charges/amounts paid to others on your behalf (4a thru 4l) | $ 3,050.15 |
| 5. Amount Financed (3+4) | $ 26,754.65 |
| 6. Finance Charge | $ 20,453.59 |
| 7. Time Balance (5+6) | $ 47,208.24 |
| We may retain or receive a portion of any amount paid to others. | |

**CO-SIGNER: YOU SHOULD READ THE NOTICE TO CO-SIGNER, WHICH HAS BEEN GIVEN TO YOU ON A SEPARATE DOCUMENT, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.**

**CO-SIGNER'S AGREEMENT:** You, the person (or persons) signing below as "Co-Signer," promise to pay to us all sums due on this Contract and to perform all agreements in this Contract. You intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. You are making this promise to induce us to make this Contract with the Buyer, even though we will use the proceeds only for the Buyer's benefit. You agree to pay even though we may not have made any prior demand for payment on the Buyer or exercised our security interest. You also acknowledge receiving a completed copy of this Contract.

**NOTICE TO _____—DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREUNDER.**

Co-Signer's Signature _____    Address _____    Date _____
Co-Signer's Signature _____    Address _____    Date _____

**CO-OWNER'S SECURITY AGREEMENT:** You, the person signing below as "Co-Owner," together with the Buyer or otherwise being all of the Owners of the Vehicle, give us a security interest in the Vehicle identified above. You agree to be bound by the terms of the Security Agreement and all other parts of this Contract except the "Promise To Pay" section. You are giving us the security interest to induce us to make this Contract with the Buyer, and to secure the payment by the Buyer of all sums due on this Contract. You will not be responsible for any deficiency which might be due after repossession and sale of the Vehicle.

Co-Owner's Signature _____    Address _____    Date _____

**BUYER, CO-SIGNER AND CO-OWNER, IF APPLICABLE, ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS CONTRACT AT THE TIME OF SIGNING, INCLUDING THE ADDITIONAL DISCLOSURES AND PAGES LISTED IN THE SECTION CALLED ADDITIONAL DISCLOSURES, TERM AND CONDITIONS.**

_[signature]_ _____ _____ _____
BUYER    BUYER    CO-SIGNER    CO-SIGNER OR CO-OWNER

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.**

Exhibit A

## ADDITIONAL TERMS AND CONDITIONS

1. **SECURITY AGREEMENT:** To secure the payment of all sums due and the performance of all required obligations under this Contract, you give a security interest in the Vehicle, in all parts (called "accessions") attached to the Vehicle at any later time, and in any proceeds of the Vehicle, including insurance proceeds. The Assignee may set-off any amounts due and unpaid out of the Contract against any of your money on deposit with Assignee. This includes any money which is now or may in the future be deposited with Assignee by you. Assignee may do this without any prior notice to you.

2. **HOW THE TOTAL OF PAYMENTS IS COMPUTED:** The Total of Payments is the sum of the Amount Financed and the Finance Charge. The Finance Charge consists solely of interest computed daily on the outstanding balance of the Amount Financed. The Finance Charge shown on the front side has been computed on the assumption that we will receive all payments on their scheduled due dates.
We will charge and collect finance charges. These charges are not more than state or federal law allows. If you pay a finance charge or fee that is more than state or federal law allows, we will apply the charge or fee first to reduce the principal and refund any excess to you.

3. **COMPUTING INTEREST:** We will charge interest on a daily basis on the outstanding balance subject to interest on each day of the loan term, including any period for which a late charge is also imposed. The daily interest rate is equal to the Annual Percentage Rate divided by the number of days in that calendar year. Buyer agrees that because interest is calculated on a daily basis, late payments will result in additional interest (and, if applicable, a late charge). Early payments will result in less interest being charged. Early and/or late payments will cause the amount of the final payment to change.

4. **LATE CHARGE:** Buyer agrees to pay a late charge for any payment not made within 10 days after its due date. The late charge will be 2% on the unpaid amount of the payment. The late charge will be due when earned. No late charge will be due if the reason that the payment is late is because, after default, the entire outstanding balance on this Contract is due. No late charge will be due if the only reason that the payment is late is because of a late charge assessed on an earlier payment.

5. **APPLICATION OF PAYMENTS:** We will apply payments in the following order of priority: first to interest; and then to late charges, fees, principal and any other amounts you owe in the order that we choose.

6. **PREPAYMENT:** You may prepay, in full or in part, the amount owed on this Contract at any time without penalty. If you prepay the Contract in part, you agree to continue to make regularly scheduled payments until you pay all amounts due under this Contract.

7. **STATEMENT OF ACCOUNT:** Upon your request, we will provide you a statement of account that shows information about your payment history including any charges and credits to your account. It will also show amounts that are due at the time of your request and information regarding future payments. We will provide you one statement of account at no cost. We may charge you reasonable costs for additional statements requested, as the law allows. Your right to receive a statement of account ends one year after the contract ends.

8. **WAIVERS.**

    a. **WAIVER BY SELLER AND ASSIGNEE:** We and Assignee waive the right to treat any property as security for the repayment of this Contract, except for the Vehicle and the other security specifically mentioned in this Contract.

    b. **WAIVERS BY BUYER, CO-SIGNER AND CO-OWNER:** You agree to make all payments on or before they are due without our having to ask. If you don't, we may enforce our rights without notifying you in advance. You give up any right you may have to require that we enforce our rights against some other person or property before we enforce our rights against you. You agree that we may give up rights against some other person but not against you. You waive due diligence in collection and all defenses based on suretyship and impairment of collateral or security.

9. **INTEREST AFTER MATURITY AND JUDGMENT:** Interest at the rate provided in this Contract shall continue to accrue on the unpaid balance until paid in full, even after maturity and/or after we get a judgment against you for the amounts due. This will apply even if the maturity occurs because of acceleration. If at any time interest as provided for in this paragraph is not permitted by law, interest shall accrue at the highest rate allowed by applicable law beginning at that time.

10. **YOUR PROMISES ABOUT OUR SECURITY INTEREST:** You will not permit anyone other than us to obtain a security interest or other rights in the Vehicle. You will pay all filing fees necessary for us to obtain and maintain our security interest in the Vehicle. You will assist us in having our security interest noted on the Certificate of Title to the Vehicle. You will not sell or give away the Vehicle. If someone puts a lien on the Vehicle, you will pay the obligation and clear the lien.

11. **YOUR PROMISES ABOUT THE VEHICLE:** You will keep the Vehicle in good condition and repair. You will pay all taxes and charges on the Vehicle. You will pay all costs of maintaining the Vehicle. You will not abuse the Vehicle or permit anything to be done to the Vehicle which will reduce its value, other than for normal wear and use. You will not use the Vehicle for illegal purposes or for hire or lease. You will not move the Vehicle from your address shown on the front of this Contract to a new permanent place of garaging without notifying us in advance.

12. **YOUR PROMISES ABOUT INSURANCE:** You will keep the Vehicle insured against fire, theft and collision until all sums due us are paid in full. The insurance coverage must be satisfactory to us and protect your interests and our interests at the time of any insured loss. The insurance must name us as "loss-payee" on the policy. The insurance must be written by an insurance company qualified to do business in Pennsylvania and licensed to sell insurance in the state where the Vehicle is permanently garaged. The insurance policy must provide us with at least ten (10) days prior written notice of any cancellation or reduction in coverage. On request, you shall deliver the policy or other evidence of insurance coverage to us. In the event of the loss or damage to the Vehicle, you will immediately notify us in writing and file a proof of loss with the insurer.

    a. **OUR RIGHT TO FILE PROOF OF LOSS:** In the event of any loss or damage to the Vehicle, if you fail or refuse to file a claim or proof of loss with the insurance company, you agree that the Seller, Assignee, any subsequent assignee, or any authorized employee of any of them ("we") may file a proof of loss with the insurance company, in your name and acting as your agent, with respect to the insured claim. You agree that you do not have the right to, and will not, revoke the power you have given us to file a proof of loss. You agree that we may exercise this power for our benefit and not for your benefit, except as provided in this Contract and by law.

    b. **OUR RIGHT TO ENDORSE INSURANCE CHECKS:** You agree that the Seller, Assignee, any subsequent assignee, or an authorized employee of any of them ("we") may endorse your name, acting as your agent, to any check, draft or other instrument we receive in payment of an insured loss or return of insurance premiums. You agree that you do not have the right to, and will not, revoke the power you have given us to make your endorsement. You agree that we may exercise this power for our benefit and not for your benefit, except as provided in this Contract and by law.

    c. **USE OF PROCEEDS:** We may apply any insurance proceeds we receive to repair or replace the Vehicle if, in our opinion, it is economically feasible and you are not then in default of this Contract. Otherwise, we will apply the insurance proceeds to reduce the unpaid balance due us. After the balance due us is paid, any excess will belong to you.

13. **OUR RIGHTS IF YOU BREAK YOUR PROMISES ABOUT THE SECURITY INTEREST, VEHICLE OR INSURANCE:** If you fail to keep your promises to pay filing fees, taxes, keep the costs necessary to keep the Vehicle in good condition and repair, we may advance any money you promised to pay, as the law allows. If you fail to keep your promises about required insurance, we may advance money to obtain insurance to cover loss or damage to the Vehicle. We have the choice of whether or not to advance any money for these purposes. Such insurance will be limited to an amount not greater than you owe on this Contract. THE INSURANCE WE PURCHASE MAY BE SIGNIFICANTLY MORE EXPENSIVE AND PROVIDE YOU LESS COVERAGE THAN INSURANCE YOU COULD PURCHASE YOURSELF.
We will add any money we advance on your behalf to the balance on which we impose Finance Charges at the Annual Percentage Rate of this Contract. You agree to repay the money advanced as we alone may specify: (i) immediately on demand, or (ii) along with your monthly payments. If we choose to allow you to repay the money advanced along with your monthly payments, we can choose the amount of these payments and how long you have to repay. If any of our rights stated in this paragraph are not permitted by law, we still have the other rights mentioned. Our payments on your behalf will not cure your failure to perform your promises in this Contract.

14. **DEFAULT:** In this paragraph "You" means the Buyer, Co-Signer and Co-Owner, or any one of them. You will be in "Default" of this Contract if any one or more of the following things happen:

    a. You do not make any payment on or before it is due; or
    b. You do not keep any promise you made in this Contract; or
    c. You do not keep any promise you made in another Contract, Note, Loan or Agreement with Seller or Assignee; or
    d. You made any untrue statement in the credit application for this Contract; or
    e. You committed any forgery in connection with this Contract; or
    f. You die, are convicted of a crime involving fraud or dishonesty, or are found by a court with jurisdiction to do so to be incapacitated; or
    g. You file bankruptcy or insolvency proceedings, or anyone files bankruptcy or insolvency proceedings against you; or
    h. You take the Vehicle outside the United States or Canada without our written consent; or
    i. You use the Vehicle or allow someone else to use it in a way that causes it not to be covered by your insurance; or
    j. You do something that causes the Vehicle to be subject to confiscation by government authorities; or
    k. The Vehicle is lost, stolen, destroyed or damaged beyond economical repair, and not fixed or found within a reasonable time; or
    l. Another creditor tries to take the Vehicle or your money on deposit with Assignee by legal process.

15. **OUR RIGHTS IF YOU ARE IN DEFAULT OF THIS CONTRACT:** If you are in Default of this Contract, we may enforce our rights according to law. We may also do the things specifically mentioned in this Contract. We may do one of these things and at the same time or later do another. Some of the things we may do are the following:

    a. **ACCELERATION:** Where the law allows, we can demand that you pay to us the entire unpaid balance owing on the Contract and all unpaid Finance Charges and other money due. You agree that you will pay this money to us in one single payment immediately upon receiving our demand.

    b. **REPOSSESSION:** We can repossess the Vehicle, unless prohibited by law. We can do this ourselves, have a qualified person do it for us, or have a government official (by replevin) do it for us. You agree that we can peaceably come on to your property to do this. We may take any other things found in the Vehicle, but will return these things to you if you ask. If you want these things back, you may reclaim them within thirty (30) days of our mailing you a Notice of Repossession. If you do not reclaim the things found in the Vehicle within that time, we may dispose of those things in the same manner as the motor vehicle. You agree that we may use your license plates in repossessing the Vehicle and taking it to a place for storage.

    c. **VOLUNTARY DELIVERY:** We can ask you to give us the Vehicle at a reasonably convenient place. You agree to give us the Vehicle if we ask.

    d. **DELAY IN ENFORCEMENT:** We can delay enforcing our rights under this Contract without losing any rights.

16. **SOME THINGS YOU SHOULD KNOW IF WE REPOSSESS THE VEHICLE:** If we repossess without using a government official (by replevin):

    a. **NOTICE:** We will send you a Notice of Repossession to your last address we know about. This Notice will tell you how to buy back (redeem) the Vehicle. This means you will have to pay the total balance on the Contract and other amounts due. This Notice will tell you other information required by law. We may, at our option, allow you to get the Vehicle back before we sell it and continue under this Contract (reinstate). If we allow you to reinstate this Contract, you must pay us all past due amounts, late charges and any costs we incurred in retaking the Vehicle to the extent allowed by law.

    b. **REDEMPTION:** You have the right to buy back (redeem) the Vehicle within 15 days of the mailing of the Notice and at any later time before we sell the Vehicle. If you redeem the Vehicle, we will deliver the Vehicle to you at a place as provided by law, as soon as is reasonably possible, but in not more than ten (10) business days of our receipt of the funds required. If you do not redeem, you give up all claim to the Vehicle.

    c. **SALE:** If you don't redeem, we will sell the Vehicle. The money received at sale will be used to pay costs and expenses you owe, and then to pay the amount you owe on the Contract.

    d. **SURPLUS OR DEFICIENCY:** If there is money left, we will pay it to the Buyer. If there is not enough money from the sale to pay what you owe, Buyer and Co-Signer agree to pay what is still owed to us.

    e. **EXPENSES:** You agree to pay the costs of repossessing, storing, repairing, preparing for sale and selling the Vehicle as may be allowed by law. These costs will only be due if:
        1. Default exceeds fifteen (15) days at the time of repossession;
        2. The amount of costs are actual, necessary and reasonable; and
        3. We can prove the costs were paid.

17. **HEIRS AND PERSONAL REPRESENTATIVES BOUND:** After your death, this Contract shall be enforceable against your heirs and personal representatives of your estate.

18. **GOVERNING LAW:** This Contract is to be interpreted according to the law of Pennsylvania.

19. **SEVERABILITY OF PROVISIONS:** If for any reason any part of this Contract shall become illegal, void or unenforceable, that part shall not be a part of this Contract.

20. **ASSIGNMENT BY BUYER:** Buyer shall not assign this Contract.

21. **THERE ARE NO WARRANTIES BY SELLER, EXPRESSED OR IMPLIED, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, UNLESS WE HAVE GIVEN YOU A SEPARATE WRITTEN WARRANTY OR UNLESS SELLER ENTERS INTO A SERVICE CONTRACT WITH BUYER WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT.**

22. **ADDITIONAL RIGHTS:** If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.

**Buyer's Guide Window Sticker.** If the Car which is described on the face of this Contract has a Buyer's Guide Window Sticker required by the Federal Trade Commission Used Car Trade Regulation Rule, the following notice applies:

> The information you see on the window form for this Vehicle is part of this Contract. Information on the window form overrides any contrary provisions in the contract of sale.

**NOTICE—ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**SUMMARY NOTICE – Prepayment, Rebate, Reinstatement and Statement of Account.** You may prepay all or part of the amount you owe under this Contract at any time without penalty. If you prepay, you will only pay finance charges that are earned but unpaid and all other amounts due up to the date of prepayment. Payments we receive for any unearned finance charges will be rebated to you. If you break the terms of this Contract we may take back the Vehicle. We may, at our option, allow you to get the Vehicle back before we sell it and continue under this Contract (reinstate). If we allow you to reinstate this Contract, you must pay us all past due amounts, late charges and any costs we incurred in retaking the Vehicle to the extent allowed by law. At your request, we will provide you with a statement of account with important information about your payment history and amounts owing.

---

**NOTICE OF PROPOSED CREDIT INSURANCE**

The signer(s) of this Contract hereby take(s) notice that Group Credit Life Insurance coverage or Group Credit Accident and Disability Insurance coverage will be applicable to this Contract if so marked on the front of this Contract, and each such type of coverage will be written by the insurance company named. This insurance, subject to acceptance by the insurer, covers only the person or persons signing the request for such insurance. The amount of charge is indicated for each type of Credit Insurance to be purchased. The term of insurance will commence as of the date the indebtedness is incurred and will expire on the original scheduled maturity date of the indebtedness. Subject to acceptance by the insurer and within 30 days, there will be delivered to the insured debtor(s) a certificate of insurance more fully describing the insurance. In the event of prepayment of the indebtedness, a refund of insurance charges will be made when due.

---

**NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION.**
**THE PROVISION BELOW IS NOT PART OF THE PENNSYLVANIA MOTOR VEHICLE INSTALLMENT SALE CONTRACT BETWEEN THE BUYER AND SELLER.**

### ASSIGNMENT

To induce you, the "Assignee" identified on the face of this Contract or as follows, _____ (Name) to purchase the within Contract, the Seller hereby warrants and represents, and continues to warrant and represent that: the sale has been made in strict conformity with all applicable federal, state and local laws and regulations, including, but not limited to, Article 2 of the Pennsylvania Uniform Commercial Code (13 Pa. C.S.A. §§2101 et seq); our title to the Contract and the Vehicle conveyed thereby is absolute, free of all liens, encumbrances and security interests, and is subject only to the rights of the Buyer as set forth therein; the Contract is genuine, the signatures thereon are not forgeries, arose from the sale of the Vehicle therein described, and all parties thereto are of full age and had capacity to contract; the description of the Vehicle and extra equipment is complete and correct; the cash downpayment and/or trade-in allowance were actually received and no part thereof consisted of notes, post-dated checks, other credit advanced by us to Buyer or rebates or similar payments from us to the Buyer (however manufacturer rebates may constitute all or a part of the downpayment); all warranties and statements therein are true; there is owing thereon the Amount Financed plus interest at the Annual Percentage Rate of the Contract set forth therein; we are duly licensed under the Pennsylvania Motor Vehicle Sales Finance chapter of Title 12 and have duly complied with all requirements thereof with respect to the transaction and with the federal Truth-in-Lending Act and with any other federal or state law, rule or regulation applicable to this Contract; a motor vehicle title certificate showing a lien or encumbrance in favor of Assignee has been or will be applied for promptly; the registration of the Vehicle has not been suspended and the Seller knows of no facts which may result in the suspension of said registration under the Pennsylvania Motor Vehicle Financial Responsibility Act; the Buyer(s) named in the within Contract is (are) personally known to the Seller to be the same identical person(s) whose signature(s) is (are) affixed to this Contract; and Seller has no knowledge of facts impairing the validity or value of the Contract. If any such warranties or representations should be breached at any time, Seller shall repurchase said Contract from Assignee, on demand, and will pay therefor, in cash, the amount owing thereon, computed as set forth below, and said remedy shall be cumulative and not exclusive, and shall not affect any other right or remedy that Assignee might have at law or in equity against Seller. In the event that Buyer fails or refuses to make any payment due hereunder on the assertion, either oral or written, that the Vehicle is defective, not as represented to the Buyer by Seller, or that Seller refuses to honor any warranty or service agreement of Seller or manufacturer, Seller agrees that, on being advised by Assignee of such claim of Buyer, Seller will repurchase the Contract from Assignee and pay Assignee for same immediately in accordance with the repurchase terms set forth below, and Seller further agrees to hold Assignee harmless from any other claims of Buyer, including attorneys' fees, costs and expenses incurred in defending against claims asserted by Buyer and including claims for refund of payments made by Buyer to Assignee. If the Seller contracts to purchase property insurance on behalf of the Buyer, and that insurance is cancelled by the insurance company prior to its scheduled expiration date, Seller will attempt to place comparable coverage with another insurance company on behalf of the Buyer. If Seller is unable to do so, Seller will notify Buyer and pay to Buyer any additional costs incurred by the Buyer in obtaining replacement insurance for the unexpired period of the original insurance policy. By signing and dating the Contract, as Seller, delivering the Contract to the Assignee and accepting payment for it, Seller authorizes the Assignee to act as the Seller's agent for the purpose of completing or correcting the identification of the Assignee in this Assignment to reflect the true Assignee who purchased the Contract and/or for the purpose of signing Seller's name to this Assignment, without recourse, if the Assignment is delivered without the Seller's signature. Assignee may exercise the power given in this paragraph for the benefit of the Assignee and not for the benefit of the Seller. Seller does not have the right to and agrees not to revoke the power given in this paragraph.

In the event that Seller is required by this Assignment to repurchase the Contract and/or Vehicle, Seller shall pay to Assignee, in cash, the full unpaid balance of the Contract as of the date of repurchase, plus any then earned Finance Charge and any and all costs and expenses paid or incurred by Assignee in respect thereto, including reasonable attorneys' fees, in connection with claims by or against any Buyer, Owner or persons in possession of the Vehicle or by or against Seller.

For value received, Seller hereby sells, assigns and transfers unto the Assignee, its successors and assigns, the within Contract, all moneys due and to become due thereunder, and all right, title and interest in and to the Vehicle therein described, with full power in the Assignee in its or our name to take all legal or other action which we might have taken save for this Assignment. Unless Seller marks one of the endorsements below, titled "WITH FULL RECOURSE" or "WITH REPURCHASE," Seller's assignment shall, except for the provisions of the paragraph titled "Assignment," be without recourse.

☐ **WITH FULL RECOURSE**—Seller agrees that, in addition to the paragraph above titled "Assignment," in the event of default by Buyer in the full payment on the due date thereof of any installment payable under the Contract or in the prompt performance of any other obligation to be performed under the Contract by Buyer, Seller will, on demand by Assignee, forthwith repurchase the Contract from Assignee for a repurchase price, in cash, computed as set forth above.

☐ **WITH REPURCHASE**—Seller agrees that, in addition to the provisions of the paragraph above titled "Assignment," in the event of any default by Buyer which shall entitle Assignee to repossess the Vehicle, Seller will, if the Vehicle is repossessed by Assignee and delivered to Seller, and without regard to the then condition of the Vehicle, forthwith repurchase the Contract and the Vehicle from Assignee for a repurchase price, in cash, computed as set forth above.

By signing below, we agree to the terms of the Assignment.

Seller _____ By _____ Date _____

Exhibit A

# COMMONWEALTH OF PENNSYLVANIA
## CERTIFICATE OF TITLE FOR A VEHICLE

FUEL TYPE: GASOLINE

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE OF VEHICLE | TITLE NUMBER |
|---|---|---|---|
| 5FNRL5H6XCB146089 | 2012 | HONDA | 71365641002 TU |

| BODY TYPE | DUP | SEAT CAP | PRIOR TITLE STATE | ODOM. PROCD. DATE | ODOM MILES | ODOM STATUS |
|---|---|---|---|---|---|---|
| SW | 0 | | PA | 2/01/16 | 051829 | 0 |

| DATE PA TITLED | DATE OF ISSUE | UNLADEN WEIGHT | GVWR | GCWR | TITLE BRANDS |
|---|---|---|---|---|---|
| 10/31/12 | 2/01/16 | | | | |

**ODOMETER STATUS**
0 = ACTUAL MILEAGE
1 = MILEAGE EXCEEDS THE MECHANICAL LIMITS
2 = NOT THE ACTUAL MILEAGE
3 = NOT THE ACTUAL MILEAGE-ODOMETER TAMPERING VERIFIED
4 = EXEMPT FROM ODOMETER DISCLOSURE

**TITLE BRANDS**
A = ANTIQUE VEHICLE
C = CLASSIC VEHICLE
D = COLLECTIBLE VEHICLE
F = OUT OF COUNTRY
G = ORIGINALLY MFGD FOR NON-U S DISTRIBUTION
H = AGRICULTURAL VEHICLE
L = LOGGING VEHICLE
P = IS/WAS A POLICE VEHICLE
R = RECONSTRUCTED
S = STREET ROD
T = RECOVERED THEFT VEHICLE
V = VEHICLE CONTAINS REISSUED VIN
W = FLOOD VEHICLE
X = IS/WAS A TAXI

**REGISTERED OWNER(S)**

ROBERT O TURNER
2632 LAMOTT AVE
WILLOW GROVE PA 19090

**FIRST LIEN FAVOR OF**

CAPITAL ONE AUTO FINANCE

FIRST LIEN RELEASED _____ DATE
BY _____ AUTHORIZED REPRESENTATIVE

**MAILING ADDRESS**

CAPITAL ONE AUTO FINANCE
PO BOX 660068
SACRAMENTO CA 95866

**SECOND LIEN FAVOR OF**

If a second lienholder is listed upon satisfaction of the first lien, the first lienholder must forward this Certificate of Title to the Bureau of Motor Vehicles with the appropriate form and fee

SECOND LIEN RELEASED _____ DATE
BY _____ AUTHORIZED REPRESENTATIVE

**pennsylvania**
DEPARTMENT OF TRANSPORTATION

LESLIE S. RICHARDS
Secretary of Transportation

I certify as of the date of issue, the official records of the Pennsylvania Department of Transportation reflect that the person(s) or company named herein is the lawful owner of the said vehicle

## D. APPLICATION FOR TITLE AND LIEN INFORMATION

TO BE COMPLETED BY PURCHASER WHEN VEHICLE IS SOLD AND THE APPROPRIATE SECTIONS ON THE REVERSE SIDE OF THIS DOCUMENT ARE COMPLETED.

SUBSCRIBED AND SWORN TO BEFORE ME
MO DAY YEAR

If a co-purchaser other than your spouse is listed and you want the title to be listed as "Joint Tenants With Right of Survivorship" (on death of one owner, title goes to surviving owner) CHECK HERE ☐. Otherwise, the title will be issued as "Tenants in Common" (on death of one owner, interest of deceased owner goes to his/her heirs or estate).

SIGNATURE OF PERSON ADMINISTERING OATH

SIGN IN PRESENCE OF A NOTARY

STAMP OR SEAL

IF NO LIEN, CHECK ☐  IS THIS AN ELT? (IF YES, FIN REQUIRED) YES ☐ NO ☐

1ST LIENHOLDER FINANCIAL INSTITUTION NUMBER

1ST LIENHOLDER NAME

STREET

CITY   STATE   ZIP

IF NO 2ND LIEN, CHECK ☐ IS THIS AN ELT? (IF YES, FIN REQUIRED) YES ☐ NO ☐

The undersigned hereby makes application for Certificate of Title to the vehicle described above, subject to the encumbrances and other legal claims set forth here

2ND LIENHOLDER FINANCIAL INSTITUTION NUMBER

2ND LIENHOLDER NAME

SIGNATURE OF APPLICANT OR AUTHORIZED SIGNER

STREET

SIGNATURE OF CO APPLICANT/TITLE OF AUTHORIZED SIGNER

CITY   STATE   ZIP

**STORE IN A SAFE PLACE - IF LOST APPLY FOR A DUPLICATE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE**

Exhibit B

# N.A.D.A. Official Used Car Guide
# Vehicle Valuation

Print Date: August 05, 2020

Vehicle Description:  2012 HONDA Odyssey-V6 Wagon 5D EX-L
VIN:  5FNRL5H6XCB146089

**Base Values**

Retail: $ 12450.00             Wholesale/Trade-in: $ 9775.00

**Optional Equipment/Adjustments**

Estimated Miles: 107500        $ 0.00

**Total Adjusted N.A.D.A. Used Car Guide Values**

Retail: $ 12450.00             Retail/Wholesale Average: $ 11112.50

Reference 08/2020 Eastern

Exhibit C



## Transaction History Report (as of 7/30/2020 )

| Account #: | | Period: | 01/30/2000 - 07/30/2020 |
|---|---|---|---|
| Loan Bal: | $12,370.79 | | |

| Date | Description | Debit | Credit |
|---|---|---|---|
| 06/03/2020 | Capital One auto loan payment. | | $655.67 |
| 03/12/2020 | Capital One auto loan payment. | | $655.67 |
| 02/04/2020 | Capital One auto loan payment. | | $655.67 |
| 01/03/2020 | Capital One auto loan payment. | | $655.67 |
| 12/04/2019 | Capital One auto loan payment. | | $655.67 |
| 11/04/2019 | Capital One auto loan payment. | | $655.67 |
| 10/02/2019 | Capital One auto loan payment. | | $655.67 |
| 09/04/2019 | Capital One auto loan payment. | | $655.87 |
| 08/05/2019 | Capital One auto loan payment. | | $655.67 |
| 07/02/2019 | Capital One auto loan payment. | | $655.67 |
| 06/04/2019 | Capital One auto loan payment. | | $655.67 |
| 05/02/2019 | Capital One auto loan payment. | | $655.67 |
| 04/04/2019 | Capital One auto loan payment. | | $655.67 |
| 03/04/2019 | Capital One auto loan payment. | | $655.67 |
| 02/07/2019 | Capital One auto loan payment. | | $655.67 |
| 01/07/2019 | Capital One auto loan payment. | | $655.67 |
| 12/04/2018 | Capital One auto loan payment. | | $655.67 |
| 11/06/2018 | Capital One auto loan payment. | | $655.67 |
| 10/03/2018 | Capital One auto loan payment. | | $655.67 |
| 09/05/2018 | Capital One auto loan payment. | | $655.67 |
| 08/02/2018 | Capital One auto loan payment. | | $655.67 |
| 07/03/2018 | Capital One auto loan payment. | | $655.67 |
| 06/04/2018 | Capital One auto loan payment. | | $655.67 |
| 05/02/2018 | Capital One auto loan payment. | | $655.67 |
| 04/03/2018 | Capital One auto loan payment. | | $655.67 |
| 03/02/2018 | Capital One auto loan payment. | | $655.67 |
| 02/02/2018 | Capital One auto loan payment. | | $655.67 |
| 01/03/2018 | Capital One auto loan payment. | | $655.67 |
| 12/04/2017 | Capital One auto loan payment. | | $655.67 |
| 11/02/2017 | Capital One auto loan payment. | | $655.67 |
| 10/03/2017 | Capital One auto loan payment. | | $655.67 |
| 09/05/2017 | Capital One auto loan payment. | | $655.67 |
| 07/27/2017 | Capital One auto loan payment. | | $655.67 |

*Page 1 of 2*

Exhibit D

**Transaction History Report (as of 7/30/2020 )**

| Account #: | | Period: | 01/30/2000 - 07/30/2020 |
|---|---|---|---|
| Loan Bal: | $12,370.79 | | |

| Date | Description | Debit | Credit |
|---|---|---|---|
| 06/29/2017 | Capital One auto loan payment. | | $655.67 |
| 05/25/2017 | Capital One auto loan payment. | | $655.67 |
| 04/27/2017 | Capital One auto loan payment. | | $655.67 |
| 03/27/2017 | Capital One auto loan payment. | | $655.67 |
| 02/24/2017 | Payment (applied toward interest, payment, or fees) | | $10.00 |
| 02/24/2017 | Capital One auto loan payment. | | $645.67 |
| 01/27/2017 | Capital One auto loan payment. | | $655.67 |
| 12/29/2016 | Capital One auto loan payment. | | $655.67 |
| 11/28/2016 | Capital One auto loan payment. | | $655.67 |
| 10/28/2016 | Capital One auto loan payment. | | $665.67 |
| 10/05/2016 | Capital One auto loan payment. | | $655.67 |
| 08/24/2016 | Capital One auto loan payment. | | $655.67 |
| 07/27/2016 | Capital One auto loan payment. | | $655.67 |
| 06/27/2016 | Capital One auto loan payment. | | $655.67 |
| 05/25/2016 | Capital One auto loan payment. | | $655.67 |
| 04/28/2016 | Capital One auto loan payment. | | $655.67 |
| 03/24/2016 | Payment (applied toward interest, payment, or fees) | | $44.33 |
| 03/24/2016 | Capital One auto loan payment. | | $655.67 |
| 02/25/2016 | Capital One auto loan payment. | | $655.67 |